


U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAY 2 - 2018

CLERK U.S. DISTRICT COURT
Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| JULIE ANN MALDONADO, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-242-A |
| | § | |
| NANCY A. BERRYHILL, | § | |
| ACTING COMMISIONER OF | § | |
| SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation

of the United States Magistrate are as follows:

**FINDINGS AND CONCLUSIONS**

**I.    STATEMENT OF THE CASE**

Plaintiff Julie Ann Maldonado ("Maldonado") filed this action pursuant to section 405(g)

and 1383(c) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for disability insurance benefits ("DIB")

under Title II and supplemental security income ("SSI") under Title XVI of the Social Security

Act ("SSA"). In January 2013, Maldonado protectively applied for DIB and SSI, alleging her

disability began on February 28, 2012. (Transcript ("Tr.") 120, 312–22.) After her application for

DIB and SSI were denied both initially and on reconsideration, Maldonado requested a hearing

before an Administrative Law Judge ("ALJ"). (Tr. 120, 153–202, 211–23.) The ALJ held a



1

hearing on January 20, 2015, and he issued a decision on July 14, 2015, in which he found Maldonado was not disabled.  (Tr. 120–29, 135–52.)

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.  In addition, numerous regulatory provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI)[1].  Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI."  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382a(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, the Court employs a five-step analysis.  20 C.F.R. §§ 404.1520, 416.920.  First, the claimant must not be presently working at any substantial gainful activity.  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. §§ 404.1527, 416.972.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  Third, disability will be found if the impairment or combination of

---

[1] The Court notes that several of the regulations and applicable SSRs governing social security cases were recently amended or rescinded.  *See, e.g.*, 82 Fed. Red. 5844-01, WL 2017 WL 168819 (F.R. Jan. 18, 2017); 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016).  These new rules generally apply to claims filed on or after January 17, 2017 or March 27, 2017, depending on the regulation, and so are not applicable to this case.  *Id.*  Thus, any new cites (unless otherwise noted) will be to the old rules that are applicable to claims filed prior to 2017.

impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.   20 C.F.R. §§ 404.1520(d), 416.920(d).   Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work.   *Id.* §§ 404.1520(e), 416.920(e).   Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.   *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).   At steps one through four, the claimant has the burden of proof to show that she is disabled.   *Crowley*, 197 F.3d at 198.   If the claimant satisfies this responsibility, the burden shifts to the Commissioner at the final step to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairment.   *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.   *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).   Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.   *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).   It is more than a mere scintilla but less than a preponderance.   *Id.*   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.   *Id.*   This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if the evidence is present.   *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III.    ISSUES

In her brief, Maldonado presents the following issues:

1.    Whether the ALJ erred in failing to properly weigh the medical opinion evidence;

2.    Whether the ALJ's credibility determination is supported by substantial evidence; and

3.    Whether the ALJ erred in relying on vocational expert ("VE") testimony elicited in response to an incomplete hypothetical question.

(Plaintiff's Brief ("Pl.'s Br.") at 1.)

## IV.    ALJ DECISION

In his July 14, 2015 decision, the ALJ concluded that Maldonado was not disabled within the meaning of the SSA. (Tr. 128.) In making his determination, the ALJ proceeded to follow the five-step sequential evaluation process set forth above. (Tr. 122–28.) At Step One, the ALJ found that Maldonado did not engage in substantial gainful activity since February 28, 2012, the alleged onset date of Maldonado's disability. (Tr. 122.) Maldonado's earnings records reflect earnings below the substantial gainful activity ("SGA") level in both 2012 and 2013. (Tr. 122, 354.) At Step Two, the ALJ held that Maldonado had the following "severe" impairments: (1) hepatitis C; (2) back disorder; (3) affective mood disorder; (4) bipolar disorder; (5) dysthymic disorder; and (6) anxiety disorder. (Tr. 123.) At Step Three, the ALJ found that Maldonado did not have an impairment or combination of impairments that met or was medically equivalent to the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 123–24.) As to Maldonado's residual functional capacity ("RFC"), the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; to stand and walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally, climb, balance, stoop, kneel, crouch, and crawl; no use of foot controls; and occasional exposure to extreme temperatures,

4

vibrations, moving mechanical parts, electrical shock, hazardous exposed places, radiation, and explosives, fumes, odors, dust, gases, and poor ventilation. From a general educational development (GED) standpoint, the claimant retains the reasoning, mathematics and language abilities to perform simple work with understanding and carrying out simple one- or two-step instructions, dealing with standardized situations with occasional or no variables in situations encountered on the job, performing basic arithmetic operations, and reading, writing, and speaking in simple sentences using normal work order. Furthermore, the claimant is limited to occasional contact with the public, co-workers, and supervisors.

(Tr. 124 (footnote and emphasis omitted).)  At Step Four, the ALJ stated that Maldonado was unable to perform any of her past relevant work.  (Tr. 127.)  Finally, at Step Five, in light of the testimony provided by the VE, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (Tr. 128 (citation omitted).)  Accordingly, the ALJ found that Maldonado was not disabled, as defined in the Social Security Act, from February 28, 2012 through the date of his decision.  (Tr. 129.)

## V.    DISCUSSION

### A.    <u>Medical Opinion Evidence</u>

#### 1.    **Opinions of Treating Physician**

In her brief, Maldonado claims that the ALJ failed to give the appropriate weight to the medical opinion of her treating physician, while instead relying on the opinion of non-examining state agency medical consultants ("SAMCs").  (Pl.'s Br. at 11, 13.)  Maldonado claims that the ALJ disregarded the opinion of her treating physician, Geetha Reddy, M.D. ("Dr. Reddy"), without citing to any specific finding in the record that provided the ALJ good cause to do so.  (Pl.'s Br. at 10–11.)  Maldonado further argues that the ALJ erred by assigning "some" weight to the "reports from non-examining state agency medical consultants."  (Pl.'s Br. at  11, 13 (citing Tr. 126).)

5

Maldonado also claims that the ALJ erred in failing to consider the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) prior to rejecting Dr. Reddy's opinions. (Pl.'s Br. at 14–15.)

The ALJ, in making his disability determination, considered the body of medical evidence in the record, stating that, "Dr. [Reddy]'s opinion was accorded very little weight because it is inconsistent with the medical evidence as a whole, which show[ed] a higher level of mental functioning." (Tr. 126.) In particular, the disability opinion of Dr. Reddy "was accorded no significant weight because the medical evidence clearly shows that the claimant is capable of performing at least a range of light exertion." (Tr. 127.)

The ALJ assigns controlling weight to the opinions of a treating physician if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. §§ 404.1527(b), (d)(1), 416.927(b), (d)(1). Because the determination of disability always remains the province of the ALJ, he can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." 209 F.3d at 453; *see* 20 C.F.R. § 416.927. Under the statutory analysis, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(c), 416.927(c); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. 404.1527(c) *only* if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factor in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.").

Contrary to Maldonado's arguments, the ALJ did not err by failing to properly weigh the medical opinions of Dr. Reddy. Although Maldonado disagrees with the amount of weight given to Dr. Reddy's opinions, the record contains substantial evidence that supports the ALJ's decision. (Tr. 126–27.) As noted by the ALJ, Dr. Reddy's opinions were "inconsistent with the medical evidence as a whole." (Tr. 126.) In fact, Dr. Reddy's own treatment notes contradict her own opinions, instead noting mainly normal findings or mild impairments regarding speech, affect, memory, concentration, and insight. (*See, e.g.*, Tr. 466, 469, 476, 486, 493, 517, 591, 624, 704, 709, 713.) Because the ALJ has discretion to increase or decrease the weight given to the opinion of the treating physician for good cause, including medical opinions that are brief, conclusory, or unsupported by the evidence, the ALJ did not err in affording "very little" or "no significant" weight to Dr. Reddy's opinion.

Maldonado, in her brief, also suggests that the ALJ further erred by improperly evaluating Dr. Reddy's opinion because he did not explicitly reference each of the six factors set forth in 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c). (Pl.'s Br. 11.) Even assuming, without deciding, that the ALJ was required to consider such factors, the Court disagrees that the ALJ failed to do so. The ALJ's opinion reflects appropriate consideration of the medical evidence with respect to each of the six factors. (Tr. 126–27.)

To begin with, the ALJ specifically stated in his decision that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927." (Tr. 124.) Furthermore, as to factors one and two, where the ALJ is to evaluate the examining and treatment relationship between Maldonado and Dr. Reddy, the ALJ referenced a November 2012 letter written by Dr. Reddy stating Maldonado was under her care, as well as other exhibits that include treatment notes written by Dr. Reddy that indicate a previous ongoing treatment relationship. (Tr.

126–27.)  In addition, the ALJ referenced "Psychiatric/Psychological Impairment Questionnaire" dated January 29, 2013, in which Dr. Reddy indicated she first started treating Maldonado on December 3, 2008. (Tr. 126, 497.)

As to factors three, four, and six, in which the ALJ evaluates the supportability and consistency of the physician's opinion as well as any other supportive or contradictory factors, the ALJ explained that "after careful consideration of the entire record," he afforded Dr. Reddy's opinion "very little weight because it [was] inconsistent with the medical evidence as a whole." (Tr. 124, 126.)  Although the ALJ did not reference specific inconsistencies between the medical record and Dr. Reddy's opinion, the trial record is replete with evidence sufficiently demonstrating that Dr. Reddy's opinion of marked limitations does not comport with the mild-to-moderate limitations recorded in the vast majority of Dr. Reddy's other encounter notes.  (Tr. 466, 469, 476, 486, 493, 517, 591, 624, 704, 709, 713.)  Furthermore, Dr. Reddy's letter describing Maldonado as "permanently unable to work" and "totally disabl[ed]" addresses legal issues that are reserved to the ALJ.  (Tr. 127.)

As to factor five, more weight is generally given "to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).  Here, the ALJ specifically references exhibits in which Dr. Reddy is identified as a psychiatrist, indicating the ALJ's awareness of Dr. Reddy's status as a specialist. (Tr. 127.)  Because the ALJ thoroughly reviewed Dr. Reddy's opinion, including consideration of the six *Newton* factors, stating both the weight given to the opinion and the reason, there is no reversible error.

### 2.    Opinions of the SAMCs

Maldonado further argues that the ALJ erred in giving "some weight" to the opinions of the SAMCs, rather than to the opinion of Dr. Reddy.  However, substantial evidence, as noted above, supports the ALJ's decision to afford no significant weight to Dr. Reddy's opinion.  (*See* Tr. 126–27.)

While an ALJ is to consider all medical opinions in determining the disability status of a claimant (*See* 20 C.F.R. §§ 404.1527(c), 416.927(c)), the ALJ is not required to give controlling weight to medical opinions of non-treating sources. *See Andrews vs. Astrue*, 917 F. Supp. 2d 624, 637 (N.D. Tex. 2013) (stating that an ALJ is not required to give the opinion of, *inter alia*, a consultative examiner controlling weight).  Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review.  20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-6p, 1996 WL 374180, at *2–4 (S.S.A. July 2, 1996).  Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions.  SSR 96-6p, 1996 WL 374180, at *2.

Here, the ALJ stated that he afforded "some weight" to opinions of the SAMCs only after consideration in accordance with SSR 96-6, which includes supportability of the opinion by evidence in the case record as a whole.  (Tr. 127.)  Without a well-supported medical opinion from Dr. Reddy, the Court finds that the ALJ did not err in affording some weight to the opinions of the SAMCs.  Therefore, remand is not required.

10

### B.    Plaintiff's Credibility

Next, Maldonado argues that the ALJ's analysis of her credibility is not supported by substantial evidence. (Pl.'s Br. 16–18.) Maldonado also asserts that the ALJ erred as a matter of law when he did not consider the required factors contained in 20 C.F.R. §§ 404.1529(c) and 416.929(c) while making a credibility assessment regarding her mental impairments and their impact on her ability to work. (Pl.'s Br. at 16.)   In addition, Maldonado makes several arguments questioning the clarity and validity of the ALJ's reasons for not finding Maldonado credible. (Pl.'s Br. at 16–19.)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. §§ 404.1529, 416.929. Once the impairment is found, the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1529(c), 416.929(c). A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). A claimant's testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a).

In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Credibility determinations by an ALJ are entitled to deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The ALJ is in

the best position to assess a claimant's credibility since the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994). Nevertheless, the ALJ's "determination or decision regarding credibility must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4. When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional capacity, limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *3.

In this case, after setting forth the standards for evaluating a claimant's credibility, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. (SSR 96-7p). The finding of diminished credibility is supported by inconsistencies between the claimant's allegations and the paucity of objective medical evidence. . . .
>
>    . . . .

12

In addition to h[er] physical impairments, the claimant alleges disability due to inability to stay focus[ed] due to symptoms of depression. However, there is no ongoing treatment for a mental impairment. The claimant has never been hospitalized for any mental impairment. During a mental status examination, it was noted that the claimant had adequate concentration[.] (Exhibit 9F). Furthermore, the claimant is able to take care of her personal needs without assistance. The undersigned concluded that she is capable of work-related activities, which involves only occasional contact with the public, co-workers, and supervisors.

The Administrative Law Judge finds that while the evidence regarding the intensity and persistence of the claimant's symptoms is partially credible, it is not credible to the extent that it demonstrates no capability to perform work. The limitations alleged are only partially consistent with and supported by the objective medical evidence and other evidence[.] (SSR 96-7p). The undersigned accepts the claimant's allegations of pain but not to the extent that it prevents h[er] from performing all work-related activities.

(Tr. 126.)

Contrary to Maldonado's argument, the ALJ did properly evaluate Maldonado's credibility and reviewed the required factors in his credibility determination. (Tr. 123, 126, 144.)   To begin with, as to the first factor, the ALJ considered Maldonado's daily activities, noting that, *inter alia*, "[t]he claimant reports the ability to cook and make her own doctor's appointments. She is able to complete all items of personal hygiene independently," "watches the news on television," and "socializes with friends." (Tr. 123.) As to the second factor in which the ALJ is to consider the location, duration, frequency, and intensity of Maldonado's pain or other symptoms, the ALJ specifically considered Maldonado's claims to have back pain, noting Maldonado was treated at the emergency room in December 2012 for such pain. (Tr. 126.) Specifically, the ALJ stated:

While it is noted that the claimant has a history of back pain, there is minimal evidence to substantiate this as debilitating. The record fails to support functional limitations that would prevent the claimant from performing all substantial gainful activities. There is no evidence of conservative treatment for back pain and the claimant has never undergone back surgery. The undersigned concludes that although the claimant may be somewhat limited by her back pain,

13

[s]he is capable of performing at least a range of light exertion with the restrictions provided above.

(Tr. 126.)

As to the third factor in which the ALJ is to consider factors that precipitate and aggravate the symptoms, the ALJ noted that Maldonado claimed to have hepatitis C as well as focus and distractibility problems due to depression. (Tr. 125–26.) The ALJ further stated, as noted above, that there was little evidence Maldonado's back pain was debilitating, as there was "no evidence of conservative treatment for back pain and the claimant has never undergone back surgery." (Tr. 126.) As to factor four, while the ALJ's opinion does not mention medications, the record reflects that he considered Maldonado's medications, as well as their effectiveness and side effects, when she testified about them at the hearing. (Tr. 144.) As to factors five, six, and seven, again, the ALJ pointed out there was no evidence of conservative treatment for back pain and that Maldonado had never undergone surgery. (Tr. 126.)

Based on the foregoing, the ALJ did properly consider Maldonado's credibility and there is sufficient evidence in the record to support that credibility determination. Maldonado's complaint that the ALJ erred by making a credibility determination that was not supported by substantial evidence is unfounded. The ALJ did not entirely discount Maldonado's complaints. (Tr. 126.) Rather, the ALJ only discounted Maldonado's credibility to the extent that it did not align with her medical record. (Tr. 126.) Because the ALJ's credibility determination is afforded considerable deference and the ALJ is in the best position to consider first-hand evidence, the Court must accept this determination so long as clearly articulated, plausible reasons support it. Maldonado's disagreement with the ALJ's assessment of her credibility is not itself evidence of error.

14

As to Maldonado's complaints with the ALJ's characterization of her psychiatric treatment and ability to concentrate, as well as the significance of her ability to perform activities of daily living, the Court notes that the record does not indicate Maldonado saw her psychiatrist for the preceding year and a half prior to the hearing before the ALJ. (Tr. 126, 139.) Although Maldonado argues in her brief that her failure to seek or follow up with treatment is a symptom of her disability and not evidence of diminished severity, the record indicates that the ALJ considered alternative explanations for the lapse in treatment. (Tr. 126, 137-38.)

As to Maldonado's complaint that the ALJ erred when he indicated that her lack of hospitalization factored into his credibility determination, the Court notes that Maldonado's lack of hospitalization is merely a factor in the ALJ's decision to limit her credibility as to the extent of her disability. Because the ALJ must look at all of the objective medical evidence, it is not improper for the ALJ to consider whether Maldonado has been hospitalized for a psychiatric condition.

Maldonado also argues that the ALJ erred when he discredited her based on only one medical record that found she had adequate concentration. (Pl.'s Br. 18; *see* Tr. 126.) In support of this argument, Maldonado cites to other evidence in the record that notes "deficits in [her] concentration." (Pl.'s Br. 18.) Only one such record, however, notes a "severe" deficit in concentration.[2] (Tr. 591.) Moreover, while the ALJ cites to only one specific instance of adequate concentration, he also references Exhibit 9F, which includes many mental status examinations that demonstrate, for the most part, mild-to-moderate impairment. (*See* Ex. 9F.) This is consistent with the ALJ's determination that although "the claimant's medically determinable impairments

---

[2] The record for Maldonado's most recent prior visit on 12/28/12 notes normal thought content, intact thought process, and alert cognition, but makes no reference to concentration. (Tr. 466.)

could reasonably be expected to cause some of the alleged symptoms . . . these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (Tr. 126.) Because the ALJ may discount Maldonado's credibility to the extent that Maldonado's complaints are not supported by the objective medical record, the ALJ did not err. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a).

Finally, Maldonado argues that her ability to attend to her personal needs and perform activities of daily living does not necessarily mean that she can work a full-time job. (Pl.'s Br. 18–19.) In her brief, Maldonado cites, *inter alia*, to *Bauer v. Astrue*, 532 F.3d 606, 607–08 (7th Cir. 2008), as authority for the proposition that a claimant's ability to perform activities of daily living does not preclude a finding of mental disability. (Pl.'s Br. 18–19.) However, unlike Maldonado, the plaintiff in *Bauer* was heavily medicated and had been hospitalized for hallucinations and suicidal thoughts. *Id.* Furthermore, two of Bauer's treating sources "both opined that she could not hold down a full-time job," despite her marginal ability to care for herself.[3] *Id.* at 607–09. In this case, Maldonado's symptoms were not as severe as Bauer's symptoms and the other evidence in the record supports the ALJ's credibility determination. Moreover, the ALJ may look to the claimant's ability to perform daily activities in conjunction with objective medical evidence as part of his credibility determination. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186, at *3. Therefore, the ALJ did not err in considering Maldonado's ability to perform activities of daily living when making his credibility determination. As a result, remand is not required.

---

[3] The opinion notes evidence that, although Bauer could undertake some activities of daily living, her thirteen-year-old son usually performed such activities.

16

## C.    Vocational Expert Testimony

Finally, Maldonado argues that the ALJ erred at Step Five when he relied on the VE's response to a flawed hypothetical because that hypothetical did not consider all of the mental limitations the ALJ previously found. (Pl.'s Br. 19.) Specifically, Maldonado complains that the ALJ, when evaluating Maldonado's mental impairments, found that Maldonado had moderate restrictions in social functioning and in the ability to maintain concentration, persistence, and pace but failed to include such limitations in his hypothetical to the VE during the hearing before the ALJ.[4] (Pl.'s Br. 19.)

A VE is called to testify because of her familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

---

[4] Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is knowns as the "special technique." *See* C.F.R. § 404.1520a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). For most Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes C, of the adult mental disorders contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(2) & (c). "Paragraph B" contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C. The category of concentration, persistence or pace "refers to the ability to sustain focused attention and concentration to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00C(3). The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, and extreme. *See* 20 C.F.R. 404.1520a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.* These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

"[T]he hypothetical question posed to the vocational expert by the ALJ must 'incorporate reasonably all disabilities of the claimant recognized by the ALJ.'" *Jones v. Astrue*, 228 F. App'x 403, 408 (5th Cir. 2007) (quoting *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)).

The paragraph B limitations of having moderate limitations in activities of social functioning, and maintaining concentration, persistence, and pace that the ALJ found following the "special technique" is not an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). Instead, it is used to rate the severity of Maldonado's mental impairments at Steps 2 and 3 or the sequential evaluation process. *Id.* "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments." *Id.* These functions include the consideration of the claimant's abilities to: (1) understand, carry out, and remember instructions; (2) use judgment in making work-related decisions; (3) respond appropriately to supervision, co-workers, and work situations; and (4) deal with changes in a routine work setting. *Id.* at *6. "While the regulations require the ALJ to evaluate[] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009).

Based on the facts in this case, the ALJ's mental RFC determination (and hypothetical to the VE) limiting Maldonado to occasional contact with the public, co-workers, and supervisors and to performing simple work with understanding and carrying out simple one-or two-step

instructions is not contradictory with the ALJ's finding in the "special technique" that Maldonado was moderately limited in her social functioning and ability to maintain concentration, persistence, or pace. As noted above, the ALJ found at Step Two that Maldonado had several severe mental impairments. (Tr. 123.) Accordingly, at Step Three, the ALJ discussed at length Maldonado's mental impairments as they pertained to the "paragraph B," finding, *inter alia*, that Maldonado had moderate limitations in her ability to maintain social functioning as well as in her ability to maintain concentration, persistence, or pace. (Tr. 123.)

The ALJ then incorporated Maldonado's functional limitations of having moderate limitations in her ability to maintain social functioning in the RFC (and the hypothetical to the VE) such that Maldonado was "[m]entally limited to no more than occasional contact with public, coworkers, supervisors." (Tr. 148.) Similar findings have been upheld in numerous other courts,[5] and even Maldonado admits in her brief that the ALJ's limitation in the RFC to "only occasional contact with others" reasonably accounts for a moderate restriction in social functioning. (*See* Pl.'s Br. at 19.)

As to the functional limitation of having moderate limitations in her ability to maintain concentration, persistence, or pace, the ALJ incorporated such limitations in the RFC (as well as in the hypothetical to the VE) by limiting Maldonado to, *inter alia*, performing only simple work

---

[5] *See, e.g., Dean v. Colvin,* No. 4:13-CV-089-A, 2014 WL 1724765, at *13 (N.D. Tex. Apr. 30, 2014) (finding that a moderate limitation in maintaining social functioning was properly incorporated into the RFC determination that claimant can only have incidental contact with the public or coworkers and only occasional contact with supervisors); *Skiles v. Colvin,* No. 4:12–CV–418–Y, 2013 WL 3486921, at *10 (finding that a moderate limitation in maintaining social functioning was properly incorporated into the RFC determination that claimant could only work with things rather than people); *Herring v. Astrue,* 788 F.Supp.2d 513, 516–19 (N.D. Tex.2011) (finding that a moderate limitation in social functioning was reasonably incorporated into the RFC and hypothetical question as a limitation that the claimant could respond appropriately to supervisors and co-workers in a simple and routine work environment); *Vaughn v. Astrue,* No. 3:08–CV–1920–L, 2009 WL 3874607, at *6 (N.D. Tex. Nov.17, 2009) (upholding ALJ's findings as supported by substantial evidence and finding that hypothetical reasonably incorporated impairments ALJ found, despite failure to include moderate social functioning limitations).

with understanding and carrying out simple one- or two- step instructions. (Tr. 124.) Once again, similar findings have been upheld in numerous other courts.[6] Because the ALJ reasonably incorporated all limitations that he found in the RFC determination into the hypothetical question posed to the VE, there is no reversible error on this point. Therefore, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de

---

[6] *See, e.g., Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (holding that ALJ's hypothetical to VE which assumed individual who, *inter alia*, would need a job with only rare public interaction, low stress, and simple one-to-two step instructions reasonably incorporated claimant's moderate limitations in concentration, persistence, and pace; *Williams v. Colvin*, No. 4:14-CV-114-BJ, 2015 WL 1288348, at *6 (Mar. 20, 2015) ("Based on the facts in this case, the ALJ's mental RFC determination limiting [claimant] to the performance of detailed but not complex work is not contradictory with the ALJ's finding in the 'special technique' that [claimant] was moderately limited in her ability to maintain concentration, persistence, or pace."); *De La Rosa v. Astrue*, No. EP-10-CV-351-RPM, 2012 WL 1078782, at *14-16 (W.D. Tex. Mar. 30, 2012) (holding that the ALJ's finding that claimant had moderate limitation in concentration, persistence, and pace was properly accounted for in an RFC determination that claimant was, *inter alia*, able to understand, remember, and carry out detailed but not complex instructions, make decisions, and attend and concentrate for extended periods); *Chadwell v. Astrue*, No. 4:08-CV-736-Y, 2010 WL 3659050, at *11 (N.D. Tex. May 25, 2010) ("[T]he ALJ's finding that [the claimant] was moderately limited in her ability to maintain concentration, persistence, or pace is not inherently contradictory with an RFC assessment that [the claimant] could not perform work that involves complex instructions."); *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (holding, in essence, that the ALJ's finding that the claimant had a moderate limitation in concentration, persistence, and pace was not inconsistent with his RFC determination that claimant could understand, remember, and carry out more than simple instructions). *But see Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001-L, 2012 WL 691893, at *8 (N.D. Tex. Feb. 17, 2012) ("The Court finds the Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive."), *adopted in* 2012 WL 696756 (N.D. Tex. Mar. 5, 2012) (Lindsay, J.); *Owen v. Astrue*, No. 3:10-CV-1439-BH, 2011 WL 588048, at *14 (N.D. Tex. Feb. 9, 2011) ("As determined by several courts, a finding that Plaintiff can perform unskilled work is fatally flawed where the ALJ has found Plaintiff to have moderate limitations in concentration, persistence, or pace.")

novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 16, 2018**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED May 2, 2018.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv